IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-01058-WYD-MEH

LEVERNE GREEN, M.D.,

    Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO, d/b/a Centura Health-St. Anthony Central Hospital, d/b/a Centura Health St. Anthony Hospitals, a Colorado corporation with multiple trade and business names;
GEORGE ZARA, individually and as CEO of Centura St. Anthony Hospitals;
CHRISTOPHER KNACKSTEDT, individually and as CFO of Centura St. Anthony Hospitals;
ELLIOTT C. "SKIP" WOHLNER, individually and as principal of Anesthesia Consultants, P.C., a Colorado corporation;
ANESTHESIA CONSULTANTS, P.C., a Colorado corporation;
EDWIN LANCE WALKER, individually and as principal of Cardiovascular and Thoracic Surgery, P.C.;
CARDIOVASCULAR AND THORACIC SURGERY, P.C., a Colorado corporation;
BARBARA FERGUSON; and
JOHN OR JANE DOES, employees or agents of Centura St. Anthony Hospitals,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on both Defendants Catholic Health Initiatives Colorado ("CHIC"), George Zara, Christopher Knackstedt, Edwin Lance Walker, CVS - Cardiovascular and Thoracic Surgery, P.C. and Barbara Ferguson's Motion for Summary Judgment [# 94], filed August 7, 2006, and Defendant Elliot C. Wohlner, M.D.'s and Anesthesia Consultants, P.C.'s Motion for Summary Judgment [# 97], filed

August 7, 2006.

The CHIC Defendants' motion seeks summary judgment on Plaintiff's claims alleging race discrimination under Section 1981 and Title VII, age discrimination under the ADEA, breach of contract, quantum meruit, promissory estoppel, and outrageous conduct against the Defendants. The motion also seeks summary judgment on Plaintiff's claim alleging tortious interference with contract against Defendants Walker, Zara and Knackstedt. The Anesthesia Consultants' motion seeks summary judgment on Plaintiff's claims alleging promissory estoppel against Defendants Anesthesia Consultants and outrageous conduct and tortious interference with contract against Defendant Wohlner. Plaintiff filed his responses to the Defendants' motions on September 20, 2006. The Defendants filed their respective replies in support of their motions on October 31, 2006. For the reasons stated below, Defendants' motions for summary judgment are denied except as to claims of outrageous conduct occurring before May of 2003.

II.   FACTUAL BACKGROUND

This action arises from the alleged wrongful termination of Plaintiff Leverne Green, M.D. Plaintiff is an anesthesiologist who has held medical staff privileges at St. Anthony Central Hospital since 1983. Plaintiff primarily practices cardiac anesthesia. In 2003, St. Anthony Central Hospital issued a competitive Request for Proposal ("RFP") in order to find a anesthesia group that would provide anaesthesia coverage to the cardiovascular operating room. St. Anthony Central Hospital hired Anesthesia Consultants. Plaintiff submitted a proposal to the hospital but was not awarded the

contract. Plaintiff has not practiced anesthesia in the cardiovascular operating room at St. Anthony Central Hospital since December of 2003.

III.  ANALYSIS

    A.  Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

    B.  Whether Summary Judgment is Proper on Plaintiff's Claim of Discrimination on the Basis of Race Under 42 U.S.C. § 1981

The Defendants assert that summary judgment should be granted on Plaintiff's claim of race discrimination. Plaintiff alleges that his Section 1981 claim is a disparate treatment claim based on discriminatory acts that affected the terms and conditions of his work with CHIC. (Pl.'s Resp. at 5.) Specifically, Plaintiff claims that CHIC engaged

in the following discriminatory acts: (1) CHIC's wrongful termination of Plaintiff's employment; (2) CHIC's decision to give Anesthesia Consultants the contract instead of Plaintiff; and (4) CHIC's failure to compensate Plaintiff for his on-call time.  (Pl.'s Resp. at 5.)

Title VII provides in part that it is unlawful for an employer to discharge or otherwise discriminate against any individual based upon race.  42 U.S.C. § 2000e-2(a)(1).  To state a valid claim under Title VII, plaintiff must prove by a preponderance of the evidence that the employer engaged in intentional discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  "A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination (e.g. oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e. circumstantial) evidence of discrimination." *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  Where the plaintiff does not have direct evidence of discrimination, a plaintiff may rely on indirect evidence by invoking the analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Perry v. Woodward*, 199 F3d 1126, 1135 (10th Cir.1999).  In *McDonnell Douglas*, the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases."  *Hicks*, 509 U.S. at 504.

When the *McDonnell Douglas* analysis is utilized, the burden of production shifts from plaintiff to defendant and back to plaintiff.  *McDonnell Douglas*, 411 U.S. at 802.  If a plaintiff establishes a prima facie case, then the burden of production shifts to the

defendant to present evidence that it had a legitimate nondiscriminatory reason for its action. *Id.* at 802-03. If the defendant meets its burden of production, the plaintiff must then demonstrate that the defendant's proffered explanation is pretextual. *Id.* at 804. Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid summary judgment, and plaintiff is not required to present direct evidence of an illegal discriminatory motive. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995).

In the case at hand, the Plaintiff alleges that the Defendants discriminated against him when they awarded the anesthesia contract to Anesthesia Consultants, which, in effect, terminated Plaintiff's employment. The Defendants, on the other hand, argue that they believed in good faith that Anesthesia Consultants was better qualified than Plaintiff to perform the contract. The Defendants further argue that Plaintiff's assertion that he should have been awarded the contract over Anesthesia Consultants fails as a matter of law because there is a failure of proof on the pretext element. Accordingly, since it appears that the Defendants do not argue that the Plaintiff failed to establish a prima facie case of racial discrimination under the *McDonnell Douglas* framework, I will focus my analysis on the third element of pretext.

The Tenth Circuit has held that if a plaintiff "presents evidence that the defendant's proffered reason for the employment decision was pretextual - i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). Pretext is normally shown in one of three ways: "(1) with evidence that the defendant's

stated reason for the adverse employment action was false . . .; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff." *Kendrick v. Penske Transportation Systems, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Direct evidence of discrimination is also adequate to create a genuine dispute regarding pretext. *Id.*

        1.    <u>Plaintiff's Racial Discrimination Claim Regarding Not Being Awarded the Contract to Provide Cardiac Anesthesia</u>

The Plaintiff makes several arguments in support of his claim that CHIC's justification for awarding the contract to Anesthesia Consultants is pretextual. First, Plaintiff argues that the evidence clearly indicates that CHIC and Dr. Walker did not award the contract to the Plaintiff because he is black. Plaintiff contended in his affidavit and a memorandum that Dr. Walker, as Chief of Cardiac Surgery, had considerable control over the committee who put forth the RFP for the anesthesia contract. Plaintiff also asserted in his affidavit that Dr. Walker made comments to him indicating that Dr. Walker did not believe black people made capable employees.

Second, Plaintiff argues that he was more qualified than Anesthesia Consultants to provide the services requested in the RFP. Plaintiff established through depositions and exhibits that he has over twenty years of experience performing cardiac anesthesia at St. Anthony Central Hospital. Although Plaintiff was not board certified, he was allowed to practice in the CHIC hospital system "by means of his demonstrated ability

and previous work history relationship in the cardiac unit." (Ex. 20.) Plaintiff also stated in his affidavit that at the time CHIC decided to award the contract, Anesthesia Consultants did not have one doctor on staff with any post-residency experience performing cardiac anesthesia. Further, Plaintiff states that Anesthesia Consultants did not respond to the RFP, and when solicited, Dr. Wohlner stated that he "did not have the qualified anesthesiologists on his group's staff at St. Anthony Central Hospital that could do cardiac anesthesia." (Ex. 15 at 66:20-24.) Moreover, in his deposition, Plaintiff stated that he submitted a proposal to the Defendants expressing his interest in the contract before the RFP went out, again in response to the RFP, and subsequently contacted the hospital regarding his status in the evaluation process.

Third, Plaintiff argues that CHIC did not follow its own procedures, as set forth in the RFP, in awarding the contract to Anesthesia Consultants. The RFP states that "[s]election of the successful group shall be made by the Community Board of the hospital, hospital management, and with input from a specially appointed committee of surgeons." (Ex. 15 at 48:23-49:1.) However, Plaintiff provided evidence in the form of depositions that the decision was made by a small group of hospital administrators including Dr. Walker. Additionally, Plaintiff's proposal was not considered or mentioned at a meeting where the RFP process was discussed.

        2.    <u>Plaintiff's Racial Discrimination Claim Regarding On-Call Pay</u>

As explained above, a plaintiff may also show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly situated, nonprotected employees. In support of his contention that CHIC

compensated similarly situated white physicians for their on-call time, Plaintiff states that he has personal knowledge that three white anesthesiologists contracted with the hospital to provide virtually identical services as the Plaintiff. Plaintiff further states that each of these doctors was paid for both on-call time and for any services provided while he was not.

Based on the proffered evidence, I find that the Plaintiff has put forth sufficient evidence to create a genuine issue of material fact on the issue of pretext. Accordingly, Defendants' motion for summary judgment on Plaintiff's claim of discrimination on the basis of race under 42 U.S.C. § 1981 is denied.

### C. Whether Summary Judgment is Proper on Plaintiff's Title VII and ADEA Claims

The Defendants assert that summary judgment should be granted on Plaintiff's claims arising under Title VII and the ADEA because Plaintiff is not an employee of CHIC. Plaintiff argues in his response that he was an employee of CHIC. The Tenth Circuit has held that the hybrid test, which is most often applied to actions arising under Title VII, is the appropriate test to use in determining employee status under the ADEA. *Oestman v. National Farmer's Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir. 1992). Under the hybrid test, the Court's main focus is upon the employer's right to control the "means and manner" of the worker's performance. *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979). However, I may also consider the following factors: (1) the type of occupation; (2) the skill required; (3) who furnishes the equipment used and the place of work; (4) the length of time during which the individual worked; (5) the

method of payment; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (10) the intention of the parties. *Oestman*, 958 F.2d at 305.

The Defendants argue in their motion that Plaintiff is not an employee. In support of this argument, the Defendants state that they have no control over the Plaintiff. They argue that the Plaintiff sets his own schedule and is free to form his own corporation and practice at other facilities. Second, the Defendants argue that Plaintiff has never received any compensation from CHIC. Plaintiff pays for his own fees and insurance and bills his own patients.

On the other hand, Plaintiff alleges that he should be considered an employee of CHIC because CHIC completely controlled Plaintiff's job. Plaintiff stated in his affidavit that his schedule was such that he was precluded from practicing medicine at any other facility, and he had no affiliations with other hospitals. Further, Plaintiff was supervised by the Medical Director of CHIC, and the hospital provided the facilities, equipment, and supplies used by the Plaintiff. CHIC required Plaintiff to receive training and continuing education. Moreover, Plaintiff worked under this arrangement for 21 years and planned to remain with CHIC until retirement. Plaintiff also states that his employment with CHIC is further evidenced by the Professional Standard Agreement that he signed with St. Anthony Hospitals in 1994. Finally, Plaintiff argues that he was forced to accept CHIC's pay structure with regard to third-party payers, which was his

exclusive source of income.

Based on the evidence before me, I find that there are material facts in dispute making it impossible for this Court to determine whether Plaintiff was an employee of CHIC. Accordingly, Defendants' motion for summary judgment on Plaintiff's Title VII and ADEA claims is denied.

      D.     <u>Whether Summary Judgment is Proper on Plaintiff's Claim for Quantum Meruit</u>

Plaintiff seeks compensation based on a theory of quantum meruit. Specifically, Plaintiff seeks equitable relief in the form of payment for days when he was scheduled to be on-call. The Defendants argue that Plaintiff's claim for quantum meruit should be dismissed for two reasons. First, Plaintiff's on-call time was an accepted condition of his privileges. Second, on-call compensation is not provided for in any written agreement between Plaintiff and the Defendants.

Under Colorado law, a plaintiff seeking to recover under a theory of quantum meruit, or unjust enrichment, must establish that "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Salzman v. Bachrach*, 996 P.2d 1263, 1265-66 (Colo. 2000). The Defendants argue that there is no evidence to satisfy the third element of quantum meruit. The Defendants further state that in 1983, Plaintiff began serving on-call time as a condition of his medical privileges at CHIC. Additionally, Plaintiff was never led to believe that he would be compensated for on-call time. The Defendants also argue that Plaintiff was among many physicians who did not receive

on-call pay.

However, Plaintiff argues that there are sufficient facts demonstrating that CHIC's failure to pay him for his on-call services was improper and unjust for the purposes of establishing a claim for quantum meruit. Plaintiff stated that in June of 2003, he learned that other anaesthesiologists were being compensated for their on-call services. In response, Plaintiff demanded payment, however, those demands were ignored. Accordingly, I find that there are material facts in dispute concerning Plaintiff's claim for recovery under the theory of quantum meruit. Therefore, Defendants' motion for summary judgment on Plaintiff's claim for quantum meruit is denied.

    E.    <u>Whether Summary Judgment is Proper on Plaintiff's Breach of Contract and Tortious Interference Claims</u>

Plaintiff alleges that the Defendants breached an agreement signed in 1993 or 1994 that provided him with certain due process protections. Plaintiff also alleges that Defendants Walker, Zara, Knackstedt, and Wohlner interfered with this contract. Plaintiff further alleges that Defendants CHIC, Walker, Zara, Knackstedt, and Wohlner interfered with his prospective contract with Anesthesia Consultants. The Defendants argue that these claims fail as a matter of law.

Under Colorado law, a plaintiff asserting a claim for breach of contract must allege: (1) the existence of a contract; (2) performance by plaintiff or a justification for non-performance; (3) defendant's failure to perform the contract; and (4) damages to the plaintiff. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1057 (Colo. 1992).

Additionally, "[a]n element of the tort of intentional interference with a contractual relationship is the existence of an underlying contract." *Dolton v. Capitol Fed. Sav. and Loan Ass'n*, 642 P.2d 21, 22 (Colo. App. 1981).

First, the Defendants argue in their motions for summary judgment that Plaintiff cannot produce a contract or testify as to the terms of the contract. Second, the Defendants state that Plaintiff has no evidence of any signed contract with CHIC. Third, the Defendants state that assuming the PSA is the contract at issue, the ADR clause bars Plaintiff's claim. Finally, the Defendants argue that since Plaintiff's medical privileges have never been revoked or reduced, there has been no breach of contract.

However, Plaintiff first argues that he has pled sufficient facts establishing that the Defendants breached a valid contract. Plaintiff avers in his affidavit that in 1993, he signed an agreement with the hospital to provide general anesthesia services. The agreement outlined scheduling, billing, training, and on-call duties. Further, the agreement "confers and vests the benefit of continued employment and staff privileges to practice anesthesiology." (Pl.'s Resp. at 30.) Plaintiff also states in his affidavit that the Defendants breached the terms of the agreement by "constructively terminating his employment without due process." (Pl.'s Resp. at 30.) Plaintiff has not received any cases from the Defendants since April of 2004, and "CHIC policies require a minimum number of cases to be performed in order to renew medical staff privileges." (Pl.'s Resp. at 30.) Thus, Plaintiff's staff privileges have been constructively eliminated. Based on the above analysis, I find that there are disputed issues of material fact regarding Plaintiff's breach of contract and tortious interference claims. Therefore,

Defendants' motions for summary judgment on Plaintiff's claims for breach of contract and tortious interference are denied.

### F. Whether Summary Judgment is Proper on Plaintiff's Claim for Promissary Estoppel

Under Colorado law, the doctrine of promissory estoppel promotes fairness in business transactions by protecting one who relies to his detriment on the promise of another. *Kiely v. St. Germain*, 670 P.2d 764, 767 (Colo. 1983). Justifiable reliance on the representations of another is the foundation of this action. *Id.* The Defendants argue that Plaintiff's claim for promissory estoppel should be dismissed because Plaintiff has not asserted an enforceable promise or demonstrated detrimental reliance. However, Plaintiff presented evidence that CHIC represented to him that he was qualified to submit a proposal for the anesthesia contract. Thus, Plaintiff had an expectation that he would continue to perform cardiac anesthesia for CHIC and continue his employment. Moreover, Plaintiff states that he relied on CHIC's and Anesthesia Consultants' representations in that he delayed efforts to find alternate employment. Based on the evidence presented, I find that there are genuine issues of material fact regarding Plaintiff's claim for promissory estoppel. Therefore, Defendants' motions for summary judgment on Plaintiff's claim for promissory estoppel are denied

### G. Whether Summary Judgment is Proper on Plaintiff's Outrageous Conduct Claims

Plaintiff's claim for outrageous conduct is based on the assertion that numerous acts committed by the Defendants constitute continuous harassment, intimidation, and demeaning conduct. Under Colorado law, to establish a claim for outrageous conduct,

a plaintiff must show that the defendant intentionally or recklessly caused severe emotional distress by extreme and outrageous conduct. *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988). In order to be characterized as outrageous, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988). Additionally, a cause of action for outrageous conduct is subject to a two year statute of limitations pursuant to Colo. Rev. Stat. § 13-80-102(1)(a).

Therefore, based on the law set forth by the Colorado Court of Appeals and the Colorado Supreme Court, I find that any claim or allegation of outrageous conduct occurring before May 2003 is barred by the applicable statute of limitations and cannot be considered by the Court for purposes of this case. Any assertions of outrageous conduct leading up to May 2003 are time barred. Accordingly, Defendants' motions for summary judgment on Plaintiff's claim for outrageous conduct are denied except as to claims of outrageous conduct occurring before May of 2003. Defendants' motions are granted as to the claims of outrageous conduct occurring before May of 2003.

IV.  CONCLUSION

In conclusion, for the reasons stated above, it is

ORDERED that Defendants Catholic Health Initiatives Colorado ("CHIC"), George Zara, Christopher Knackstedt, Edwin Lance Walker, CVS - Cardiovascular and Thoracic Surgery, P.C. and Barbara Ferguson's Motion for Summary Judgment [# 94], filed August 7, 2006, is **DENIED** except as to claims of outrageous conduct occurring

-14-

before May of 2003.  Defendants' motion is granted as to the claims of outrageous conduct occurring before May of 2003.  It is

FURTHER ORDERED that Defendant Elliot C. Wohlner, M.D.'s and Anesthesia Consultants, P.C.'s Motion for Summary Judgment [# 97], filed August 7, 2006, is **DENIED** except as to claims of outrageous conduct occurring before May of 2003.  Defendants' motion is granted as to the claims of outrageous conduct occurring before May of 2003.

Dated:  February 28, 2007

              BY THE COURT:

              s/ Wiley Y. Daniel
              Wiley Y. Daniel
              U. S. District Judge